# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

FREDRICA RENEE LINTON, a citizen and resident of Arizona;

    *Plaintiff*,

v.

BARBARA E. EMBRY, a citizen and resident of Colorado;

    *Defendant*.

---

## COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND

---

Plaintiff Fredrica Renee Linton, through her undersigned attorney, Timothy G. O'Neill of Snell & Wilmer, LLP, for her Complaint for Declaratory Judgment against Defendant Barbara Embry, states as follows:

### I. NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57 to determine real and justiciable controversies among the parties with respect to Plaintiff's ownership of, and rights to, funds in two multiple-party bank accounts, as that term is defined in C.R.S. § 15-15-201(5), et seq.

### II. PARTIES, JURISDICTION AND VENUE

2. Plaintiff Fredrica Renee Linton ("Plaintiff Ms. Linton") is a citizen and resident of the State of Arizona.

3. Defendant Barbara Embry ("Defendant Ms. Embry") is a citizen of the State of Colorado and a resident of Fremont County, Colorado, who, upon information and belief, resides at 0101 County Line Road 40, Coaldale, Colorado 81222.

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Defendant resides in the District of Colorado and a substantial part of the events giving rise to these claims occurred in the District of Colorado.

### III.  FACTUAL ALLEGATIONS

6. Plaintiff Ms. Linton and Defendant Ms. Embry are the adult daughters and only surviving children of Fred Linton ("Mr. Fred Linton") who resided in Freemont County, Colorado until his death on January 3, 2022 at the age of 96 years.

7. In approximately 2004, Mr. Fred Linton opened a primary checking account (Account No. *7581) with Wells Fargo.

8. In approximately 2009, Mr. Fred Linton opened a second account with Wells Fargo (Account No. *4452). The second account was a Wells Fargo high yield savings account.

9. Plaintiff Ms. Linton and Defendant Ms. Embry are both the daughters of Mr. Fred Linton, but they have different mothers. Ms. Embry's mother passed away in 1993. Mr. Fred Linton subsequently married Arlene (Lee) Linton, who is Plaintiff Ms. Linton's step-mother. Ms. Linton's step-mother, Arlene, passed away on February 13, 2010.

10. On March 25, 2010, Mr. Fred Linton visited his Wells Fargo branch and submitted two Relationship Change Applications in order to add Plaintiff Ms. Linton as a joint owner of both the primary checking account and the high yield savings account (hereinafter referred to as the "Wells Fargo Joint Ownership Accounts").

11. The Relationship Change Application forms were signed by Mr. Fred Linton on March 25, 2010 under penalty of perjury, confirming that everything stated in the applications was correct, and acknowledging the terms and conditions applicable to the Wells Fargo Joint Ownership Accounts. Both Relationship Change Application forms specifically refer to Plaintiff Ms. Linton as the "Secondary Joint Owner."

12. The Relationship Change Applications for both of the Wells Fargo Joint Ownership Accounts were also signed electronically by Plaintiff Ms. Linton on March 25, 2010. True and correct copies of the Relationship Change Applications for the Wells Fargo Joint Ownership Accounts are attached hereto as **Exhibit A** and **Exhibit B**.

13. On May 4, 2010, Mr. Fred Linton executed the Last Will and Testament of Fred Linton (the "Will"), witnessed by two attesting witnesses who are non-family members. The self-proving affidavit of the Will was duly notarized that same day, May 4, 2010.

14. The Will names Plaintiff Ms. Linton as Personal Representative of Fred's estate, with Mr. Lars Arnold Isaacson, as Successor Personal Representative. Mr. Isaacson was Ms. Linton's husband, and is now deceased.

15. In 2016, Mr. Fred Linton moved to Canon City, Colorado, approximately forty (40) miles from Defendant Ms. Embry's residence in Coaldale, Colorado.

16. On March 1, 2020, Mr. Fred Linton executed his First Codicil to Last Will and Testament of Fred Linton (the "Codicil"). Because of the death of Mr. Isaacson, the Codicil amends the Will to appoint Plaintiff Ms. Linton as Personal Representative and Defendant Ms. Embry as Successor Personal Representative. The Codicil was witnessed by two individuals, Cassandra and Christopher McCune. Cassandra is the granddaughter of Ms. Embry.

17. Neither the Will nor the Codicil make any reference to the Wells Fargo Joint Ownership Accounts. The Will reflects Fred's intention to dispose of property over which he had "testamentary capacity." The Codicil, executed on March 1, 2020 in Canon City, Colorado, expressly ratifies and confirms the Will, other than the designation of Defendant Ms. Embry as a potential Successor Personal Representative.

18. Because Defendant Ms. Embry lived within close proximity to Mr. Fred Linton since 2016, she would, from time-to-time, assist him in writing checks to be drawn on his Wells Fargo primary checking account. Defendant Ms. Embry would draft the payee portion of the checks, which would then be signed by Mr. Fred Linton. The checks expressly list the names of Fred Linton and Renee Linton on the face of each check.

19. The account statements for both of the Wells Fargo Joint Ownership Accounts were delivered monthly to Fred's address in Canon City.

20. At no time prior to his death, did Mr. Fred Linton undertake any effort to contact Wells Fargo, or initiate any paperwork with Wells Fargo, in an effort to change or alter the joint ownership of the Wells Fargo Joint Ownership Accounts with Plaintiff Ms. Linton. Despite the fact that Defendant Ms. Embry had assisted in writing checks drawn on the Wells Fargo primary checking account, Mr. Fred Linton chose not to add her as a signatory on any of the accounts or

add her as joint owner on of any of the accounts, even though he had executed the Codicil in May 2020.

21. As of December 31, 2021, the balance for both of the Wells Fargo Joint Ownership Accounts totaled $192,492.97.

22. After Fred's death on January 3, 2022, Defendant Ms. Embry began to send threatening emails and text messages to Plaintiff Ms. Linton demanding payment from Plaintiff Ms. Linton in the amount of $100,000 for "half of my inheritance."

23. Plaintiff Ms. Linton, and her estate counsel, informed Defendant Ms. Embry about the provisions of Colorado Law related to multi-party accounts and the non-testamentary ownership after the death of one of the owners. Defendant Ms. Embry continued to send threatening messages including one asserting that: "I cannot believe you are trying to steal the money my father left for me!!" "You are evil."

### IV.   CLAIM FOR RELIEF
### (Declaratory Judgment)

24. Plaintiff Ms. Linton incorporates all paragraphs above as though fully set forth herein.

25. Pursuant to C.R.S. § 15-15-201(5), a "Multi-Party Account" is defined as "an account payable on request to one or more of two or more parties, whether or not a right of survivorship is mentioned." The Wells Fargo Joint Ownership Accounts are "multi-party accounts" as that term is utilized in C.R.S. § 15-15-201, *et seq*.

26. Pursuant to C.R.S. § 15-15-212(1) on the death of one party to a multi-party account, "sums on deposit in a multiple-party account belong to the surviving party."

27. Pursuant to C.R.S. § 15-15-212(5), "sums remaining on deposit at the death of a party to a multiple-party account, which are not subject to a POD designation, belong to the surviving party or parties *as against the estate of the decedent* unless there is clear and convincing evidence of a different intention."

28. Pursuant to C.R.S. § 15-15-213(2), the right of survivorship arising from operation of law under C.R.S. § 15-15-212, "may not be altered by will."

29. Pursuant to C.R.S. § 15-15-214, a transfer of funds to the surviving party in a multi-party account pursuant to C.R.S. § 15-15-212, "is effective by reason of the terms of the account involved and this part two (multiple-person accounts) and is *not testamentary or subject to Articles 10 to 13 of this title (estate administration)." Id.,* (emphasis added).

30. Mr. Fred Linton owned no real estate at the date of his death. After Mr. Fred Linton's death, Plaintiff Ms. Linton and Defendant Ms. Embry determined that Fred's remaining personal property had little material value.

31. Defendant Ms. Embry apparently became upset because the bulk of Fred's assets were held in the Wells Fargo Joint Ownership Accounts with Plaintiff Ms. Linton. At no time from March 25, 2010 until the date of his death on January 3, 2022, a period more than eleven years, did Mr. Fred Linton undertake any steps in order to change the nature of the joint ownership of the Wells Fargo Joint Ownership Accounts with Plaintiff Ms. Linton.

32. As the Personal Representative under the Will, Plaintiff Ms. Linton determined that there was insufficient value related to Fred's personal property to justify a formal probate. Apparently upset with the non-testamentary transfer of funds on deposit in the Wells Fargo Joint Ownership Accounts by application of C.R.S. § 15-15-212, Defendant Ms. Embry is now

seeking to open a formal probate and threatens to attack the ownership of sums on deposit in the Wells Fargo Joint Ownership Accounts which occurred by operation of law.

33. To that end, Defendant Ms. Embry has retained an attorney and filed a Petition For Formal Probate of Will and Formal Appointment of Personal Representative in the District Court for Freemont County, Colorado ("Colorado Petition"). A true and correct copy of the Colorado Petition is attached as **Exhibit C**. Defendant Ms. Embry, upon information and belief, intends to pursue appointment of herself as Personal Representative as an inappropriate method to attempt to change the non-testamentary nature of the assets transferred to Plaintiff Ms. Linton by operation of C.R.S. § 15-15-212.

34. Based upon the clear and unequivocal provisions of C.R.S. § 15-15-212, *et seq.*, Plaintiff Ms. Linton seeks a judicial decree that the funds from the Wells Fargo Joint Ownership Accounts, by operation of C.R.S. § 15-15-212, are now owned exclusively by Plaintiff Ms. Linton.

35. Declaratory judgment will resolve the controversy between the parties as to ownership of the Wells Fargo Joint Ownership Accounts and will clarify the legal rights at issue. Defendant Ms. Embry's effort to open a formal probate has not, as yet, been approved. As a result, there is no current action, outside of this Complaint for Declaratory Judgment, in which these issues have been raised. Finally, as indicated in C.R.S. § 15-15-214, the Wells Fargo Joint Ownership Accounts are "not testamentary or subject to Articles 10 to 13 of this title (estate administration)" and should not be part of a probate proceeding in any event.

## V. JURY DEMAND

Plaintiff Ms. Linton demands a trial to a jury on all issues so triable herein.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ms. Linton respectfully requests that the Court enter judgment in her favor and against Defendant Ms. Embry:

(1) Declaring that Plaintiff Ms. Linton is the sole owner of the funds on deposit in Wells Fargo Joint Ownership Accounts at the date of Mr. Fred Linton's death, pursuant to the operation of C.R.S. § 15-15-212;

(2) Declaring that the Wells Fargo Joint Ownership Accounts, pursuant to C.R.S. § 15-15-214, are not testamentary and are not subject to estate administration; and

(3) For such other and further relief as the Court deems just and proper under the circumstances, including costs and attorney's fees as provided by law.

DATED:  March 18, 2022

Respectfully submitted,

 /s/ Timothy G. O'Neill
Timothy G. O'Neill
SNELL & WILMER LLP
1200 Seventeenth Street, Suite 1900
Denver, Colorado 80202
Telephone:  (303) 634-2000
Facsimile:   (303) 634-2020
E-mail: toneill@swlaw.com
*Attorneys for Plaintiff Fredrica Renee Linton*