IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–00680–CMA–MDB

FREDRICA RENEE LINTON, a citizen and resident of Arizona,

    Plaintiff,

v.

BARBARA E. EMBRY, a citizen and resident of Colorado,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Defendant's "Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)." (["Motion to Dismiss"], Doc. No. 7.) Plaintiff has filed a response in opposition to the Motion to Dismiss, Defendant has filed a supplemental set of facts, and Plaintiff has filed a response to Defendant's supplement. (["Response"], Doc. No. 10; ["Supplement"], Doc. No. 12; ["Response to Supplement"], Doc. No. 13.) The Motion to Dismiss has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding disposition. (Doc. No. 8; *see* Doc. No. 11.) For the following reasons, it is **RECOMMENDED** that the Motion to Dismiss be **DENIED**.

## STATEMENT OF THE CASE

Plaintiff Fredrica Renee Linton ["Plaintiff"] brings this diversity-based declaratory judgment action against her paternal half-sister, Defendant Barbara E. Embry ["Defendant"], seeking a determination that she is the sole owner of certain bank account funds. (Doc. No. 1 at ¶¶ 1-3, 6, 9.) The parties in this lawsuit are the adult daughters and sole surviving children of Mr. Fred Linton ["Mr. Linton"], an individual who resided in Freemont County, Colorado until his death on January 3, 2022, at the age of ninety-six. (*Id.* at ¶ 6.) According to the Complaint, in 2004 or thereabouts, Mr. Linton opened a primary checking account with Wells Fargo, and around 2009, he opened an additional high yield savings account with that same bank. (*Id.* at ¶¶ 7-8.) On March 25, 2010, Mr. Linton reportedly "visited his Wells Fargo branch and submitted two Relationship Change Applications in order to add Plaintiff Ms. Linton as a joint owner of both the primary checking account and the high yield savings account[.]" (*Id.* at ¶ 10.) The Relationship Change Applications, which were signed by both Mr. Linton and Plaintiff, specifically refer to Plaintiff as the "Secondary Joint Owner" of each of Mr. Linton's accounts [hereinafter, the "Wells Fargo Accounts"]. (*Id.* at ¶¶ 11-12; *see* Doc. No. 1-2; Doc. No. 1-3.)

According to the Complaint, on May 4, 2010, Mr. Linton executed the "Last Will and Testament of Fred Linton" [the "Will"], which was "witnessed by two attesting witnesses who are non-family members[,]" and "duly notarized" by way of a self-proving affidavit. (Doc. No. 1 at ¶ 13.) The Will named Plaintiff as Personal Representative of Mr. Linton's estate, and Plaintiff's husband, Mr. Isaacson, as the estate's Successor Personal Representative. (*Id.* at ¶ 14.) Following Mr. Isaacson's death, on March 1, 2020, Mr. Linton executed the "First Codicil to Last Will and Testament of Fred Linton" [the "Codicil"], which amended the Will to appoint Mr.

2

Linton's other daughter, Defendant Ms. Embry, as the Successor Representative of Mr. Linton's estate. (*Id.* at ¶ 16.) The Codicil "expressly ratifies and confirms the Will, other than the designation of Defendant Ms. Embry as a potential Successor Personal Representative." (*Id.* at ¶ 17.) Neither the Will nor the Codicil references the Wells Fargo Accounts. (*Id.*)

According to the Complaint, because Defendant lived near Mr. Linton, "she would, from time-to-time, assist him in writing checks to be drawn on his Wells Fargo primary checking account." (*Id.* at ¶ 18.) However, according to Plaintiff, "[a]t no time prior to his death" did Mr. Linton "undertake any effort" to add Defendant as a joint owner, or a signatory, on either of the Wells Fargo Accounts. (*Id.* at ¶ 20.) Nor did Mr. Linton apparently make any other efforts to "change or alter the joint ownership" of the Wells Fargo Accounts. (*Id.* at ¶¶ 20, 31.)

According to the Complaint, as of December 31, 2021, the total balance of the Wells Fargo Accounts jointly owned by Mr. Linton and Plaintiff was $192,492.97. (*Id.* at ¶ 21.) Plaintiff alleges that, upon her father's death on January 3, 2022, she became the exclusive owner of those funds, by operation of law, pursuant to Colorado's multi-party account statute, Colo. Rev. Stat. §§ 15-15-201 *et seq.*. (*Id.* at ¶¶ 23, 25-29, 34.) Plaintiff alleges that, after her father's death, Defendant started sending "threatening emails and text messages," in which Defendant "demand[ed] payment from Plaintiff [] in the amount of $100,000 for 'half of my inheritance.'" (*Id.* at ¶ 22.) Plaintiff claims that, even though she informed Defendant "about the provisions of Colorado Law related to multi-party accounts and the non-testamentary ownership after the death of one of the owners," Defendant "continued to send threatening messages," in which she accused Plaintiff of "trying to steal" her inheritance. (*Id.* at ¶ 23.)

3

Ten weeks after Mr. Linton's death, on March 18, 2022, Plaintiff commenced this lawsuit, seeking declarations: (1) "that Plaintiff Ms. Linton is the sole owner of the funds on deposit in [the Wells Fargo Accounts] at the date of Mr. Fred Linton's death, pursuant to the operation of [Colo. Rev. Stat.] § 15-15-212;" and (2) "that the [Wells Fargo Accounts], pursuant to [Colo. Rev. Stat.] § 15-15-214, are not testamentary and are not subject to estate administration." (*Id.* at 8.) In the Complaint, Plaintiff alleges subject matter jurisdiction under 28 U.S.C. § 1332, based on diversity of citizenship. (*Id.* at ¶ 4.) Defendant now moves to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this case falls within the "probate exception" to federal diversity jurisdiction. (Doc. No. 7 at 1-3.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

## ANALYSIS

"Federal courts are courts of limited jurisdiction and, as such, much have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Here, Plaintiff alleges subject matter jurisdiction predicated solely upon diversity of citizenship,[1] which requires: (1) complete diversity among the parties; and (2) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

---

[1] This case is a declaratory judgment action brought pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*. (Doc. No. 1 at ¶ 1.) The statute is remedial and an independent basis for jurisdiction must be established. *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976) (citing *Barr v. United States*, 478 F.2d 1152, 1156 (10th Cir. 1973); *Groundhog v. Keeler*, 442 F.2d 674, 683 (10th Cir. 1971)).

5

While there is no dispute that the parties are completely diverse[2] and that the amount in controversy requirement is satisfied,[3] Defendant argues that Plaintiff's claims are barred by virtue of the probate exception to federal diversity jurisdiction. (Doc. No. 7 at 3.)

Federal courts have long recognized a "probate exception" to otherwise proper diversity-based subject matter jurisdiction. *See, e.g.*, *Markham v. Allen*, 326 U.S. 490, 494 (1946); *see also Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982) (discussing history and rationale for the probate exception). The exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). However, "it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312. "Thus, where diversity jurisdiction exists, federal courts retain jurisdiction to decide matters that are probate-related or that may impact the state probate court's performance of the three tasks reserved to it, so long as the federal court itself does not engage in these tasks." *Dunlap v. Nielsen*, 771 F. App'x 846, 850 (10th Cir. 2019); *see, e.g.*, *id.* at 299-300 (holding claim did not fall within probate exception even though it raised "questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument") (internal quotation marks omitted); *Markham*, 326 U.S. at 494 (declaring federal courts have jurisdiction to adjudicate rights in property, even though the state probate court may be bound by

---

[2] Ms. Linton is alleged to be a citizen of Arizona, while Dr. Embry is alleged to be a citizen of Colorado. (Doc. No. 1 at ¶¶ 2-3.)

[3] This lawsuit concerns a dispute as to the ownership of bank account funds totaling $192,492.97. (Doc. No. 1 at ¶ 21.)

the federal court's judgment); *Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 & n.4 (4th Cir. 2015) (holding federal court had jurisdiction to decide contract interpretation issue though it could affect the state court's distribution of estate assets).

In the Motion to Dismiss, Defendant argues that the probate exception applies here, because in order to resolve the parties' dispute, the Court must decide whether, as Plaintiff contends, the bank account funds at issue "pass outside of probate by operation of law via Colorado's multi-party account statute," or whether, as Defendant contends, the funds "remain as part of [Mr. Linton's] probate estate subject to a constructive trust because Plaintiff only became joint owner through improper or illegal means." (Doc. No. 7 at 8-9.) Defendant argues that this dispute is "logically related to" the administration of Mr. Linton's probate estate, and therefore, the Colorado probate court "has exclusive jurisdiction to decide these questions." (*Id.* at 9.)

The Court is unpersuaded by Defendant's argument. The crux of the parties' dispute is who owns the money in the Wells Fargo Accounts. Nothing in the facts provided suggests that the Colorado probate court has custody of those funds currently. *See Marshall*, 547 U.S. at 312 (holding that the probate exception does not apply where the party is not "seek[ing] to reach a *res* in the custody of the state court"); *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013) ("As a threshold matter, the probate exception only applies if the dispute concerns property within the custody of the state court."). Nor are there any facts suggesting that the Colorado probate court would be the exclusive forum for determining the parties' respective rights to those funds. Specifically, the Complaint alleges that the Wells Fargo Accounts are "multiple-party bank accounts," which at the time of Mr. Linton's death, were owned exclusively by Mr. Linton and Plaintiff. (Doc. No. 1 at ¶ 25.) Pursuant to Colorado's multi-party account statute, when one

7

of the owners of a multiple-party bank account dies, the funds from the account generally do not become property of the decedent's estate or subject to probate because, by operation of law, "on death of a party [to a multi-party account] sums on deposit in [the] account belong to the surviving party or parties." Colo. Rev. Stat. § 15-15-212(1); *accord Sandstead-Corona v. Sandstead*, 415 P.3d 310, 320 (Colo. 2018). This statutory right of survivorship "may not be altered by will." Colo. Rev. Stat. § 15-15-213(2). In addition, the statute makes clear that the transfer of funds to the surviving party "is effective by reason of the terms of the account involved . . . and is not testamentary or subject to [statutory provisions concerning] estate administration[.]" *Id.* at § 15-15-214. In other words, because the funds in a multiple-party bank account automatically transfer to the surviving account owner, they do not become property of the decedent's estate, and thus, are not subject to estate administration by Colorado probate courts. *See Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010) ("[T]he *res* at issue is not within the probate court's jurisdiction if it was not part of the estate at the time of the decedent's death.").

In this case, Plaintiff requests relief directed at assets that she plausibly alleges were not part of her father's estate at the time of his death. Determining the parties' rights in connection with those assets does not require the Court to probate or annul a will, to administer a decedent's estate, or to dispose of property in the custody of a state probate court. Under such circumstances, the probate exception does not apply. *Marshall*, 547 U.S. at 311-21; *see Parks v. Kiewel*, No. 6:15-1196-JTM-GEB, 2015 WL 7295457, at *4 (D. Kan. Nov. 18, 2015) (holding the probate exception did not apply to an injunctive relief claim seeking a request for accounting of property that allegedly transferred out of the decedent's estate by operation of law at the time

8

of death); *see also Tripp v. Mary M. Tripp Family Trust*, No. 20-cv-02012-LTB-KLM, 2021 WL 5537552, at *3 (D. Colo. Feb. 17, 2021) (distinguishing between a determination as to "[t]he appropriate distributions to be made pursuant to [a] will and Plaintiff's rights as a beneficiary thereunder," which "fall squarely within the state probate court's jurisdiction," with a determination as to the validity of an *inter vivos* trust, to which the probate exception was inapplicable); *Sarkesian v. Sarkesian*, No. 21-1285-JWB, 2022 WL 4130982, at *3 (D. Kan. Sept. 12, 2022) (holding that a request for relief directed at a non-testamentary asset did not implicate the probate exception). Thus, insofar as Plaintiff seeks a determination that she is the sole owner of the funds on deposit in the Wells Fargo Accounts, and that those funds are not subject to estate administration, her claims for relief do not fall outside of this Court's diversity jurisdiction. While resolution of this case may ultimately affect the distribution of estate assets, this does not constitute the "dispos[al] of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311; *see Dunlap*, 771 F. App'x at 850 (stating that federal court resolution of "a question that may affect the distribution of estate assets does not constitute a distribution of estate assets subject to the probate exception"); *Lee Graham*, 777 F.3d at 681 (after *Marshall*, a matter "does not fall under the probate exception if it merely impacts a state court's performance of one of [the] tasks" *Marshall* reserved to the probate court). Therefore, because the probate exception does not apply, and the elements of diversity jurisdiction are otherwise present, the Motion to Dismiss should be denied.[4]

---

[4] Defendant also moves for sanctions, under Colo. Rev. Stat. § 13-17-102, arguing that Plaintiff initiated this lawsuit without "substantial justification" for doing so. (Doc. No. 7 at 10-11.) The Court finds no basis or support for sanctions. As such, the request should be denied.

## CONCLUSION

For the reasons set forth herein, this Court respectfully **RECOMMENDS** that:

(1) The "Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)" (Doc. No. 7) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

**DATED**: January 27, 2023.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge